**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **BYRDELL WALTON, et al.,** | ) | |
| | ) | **Case No. 12-cv-4493** |
| **Plaintiffs,** | ) | |
| | ) | **Judge Joan H. Lefkow** |
| **v.** | ) | |
| | ) | |
| **MARK DIAMOND, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Byrdell Walton ("Walton"), Wadie Morehead ("Morehead"), and Louise

Mason ("Mason") (collectively "plaintiffs") filed an eight-count complaint against twelve named

defendants and additional "unknown assignees."  The United States of America was substituted

as a defendant in place of the Secretary for the U.S. Department of Housing and Urban

Development ("HUD"), Shaun Donovan, and HUD, and was later dismissed as a defendant.

Plaintiffs also dismissed all claims against defendants Urban Financial Group, Inc., Reverse

Mortgage Solutions, Inc., and Mortgage Electronic Registration Systems, Inc ("MERS").

Accordingly, Counts I, II and III of the complaint are moot.

The docket does not indicate that plaintiffs have served defendants United Construction

Services of America, Inc. ("UCA"), or Able Title Insurance Agency, Inc. ("Able"), likely

rendering Count VIII of the complaint moot as well.  Plaintiffs also have not identified any

"unknown assignees."

The claims presently at issue in this case appear limited to Counts IV through VII of the

complaint.  Count IV alleges a violation of the Illinois Consumer Fraud Act ("ICFA"), 815 Ill.

Comp. Stat. 505/1, *et seq*., against defendants Mark S. Diamond ("Diamond"), United

Residential Services & Real Estate, Inc. ("URS"), UCA, Matthew Fefferman ("Fefferman"),

Dennis Both ("Both"), Harbor Financial Group, Ltd ("Harbor"), and Able.  Counts V and VI are

directed toward  defendants Diamond, Fefferman, Harbor, URS, and UCA, and allege violations

of the Civil Rights Act ("CRA"), 42 U.S.C. § 1981, and the Fair Housing Act ("FHA"), 42

U.S.C. § 3605,  respectively.  Count VII alleges a civil conspiracy against Diamond, Fefferman,

Harbor, URS, UCA, and Both.  The court's jurisdiction rests on 28 U.S.C. §§ 1331 (federal

question) and 1343 (civil rights), 15 U.S.C. § 1640(c) (Truth-in-Lending).  It has supplemental

jurisdiction over the state law claims (28 U.S.C. § 1367).

Fefferman and Harbor answered the claims alleged against them, and the remaining

(served) defendants have moved to dismiss. Both moves to dismiss Counts IV and VII as to him,

pursuant to Federal Rules of Civil Procedure ("Rules") 9 and 12(b)(6).  Diamond and UCA also

move pursuant to Rules 9 and 12(b)(b)(6) to dismiss Counts IV through VII against them.  For

the reasons set forth more fully below, Both's motion to dismiss (dkt. 25) is denied.  Diamond

and URS's motion to dismiss (dkt. 36) is granted in part and denied in part.

## BACKGROUND

As alleged in the complaint, plaintiffs are three African-American women over the age of

70 who live on the south and west sides of Chicago.  Walton has owned a three-flat apartment

building for approximately 50 years.  The building has been mortgage free for many years.  In

2010, Walton needed some minor repairs done on the property, including repairing a few

windows and fixing the ceiling in her sun porch.  Defendants Diamond and Both visited Walton

at her home. Diamond identified himself as a contractor who would do the repair work on Walton's home.

Walton signed papers that Diamond gave her, but did not receive copies of those papers and did not know what she was signing. Weeks after she met Diamond and Both, Walton received documents indicating that she had secured a reverse mortgage on her property from Urban on September 10, 2010. Harbor is listed as the mortgage broker. The documents indicated that Walton would receive a $47,634.24 "cash out" from the reverse mortgage, but Walton never received any money from the reverse mortgage.

Walton claims that Diamond fraudulently obtained the $47,634.24 "cash out" intended for her and used that money for his own benefit without her knowledge or permission. One of the loan documents stated that Walton would pick up the check for the loan proceeds at URS, but Walton did not know where URS was located and never agreed or authorized the check to be delivered to URS or Diamond. Walton claims that Both notarized and filled-in blank spaces in the mortgage documents in an attempt to further a scheme to divert the $47,634.24 payment to Diamond. Walton claims that Able Title disbursed and delivered the disputed loan proceeds to Diamond without her authorization.

After Walton signed the mortgage documents, Diamond told her what work he would do on the property. Diamond never provided Walton with a written description of the promised work, or an estimate for how much those repairs would costs. Any repairs Diamond did provide, were defective. In June 2011, one of Diamond's subcontractors placed a contractor's lien on Walton's home. Walton had to hire other contracts to complete or correct the work Diamond

performed.  Walton lost more than $46,000 in equity in her home and was not able to rent out the upstairs apartments because of Diamond's unfinished work.

As alleged in the complaint, Morehead has lived in her home since 1982 and prior to her dealings with Diamond did not have a mortgage on her home.  In April 2010, Diamond told Morehead that he could put an addition on her home for $55,000 and that the City of Chicago would approve the project.  At that time, Morehead had not decided whether she wanted to enter into a construction contract, or whether she wanted to finance the addition through a reverse mortgage.  Diamond had Morehead sign some paperwork and told her that those documents merely indicated that she was interested in exploring a reverse mortgage.

On April 21, 2010, Diamond returned to Morehead's home with Both and another young man.  Diamond had Morehead sign numerous documents, which she did not receive copies of and did not have time to read.  Both notarized and filled-in blanks in the documents.  A week or two later, Diamond brought copies of documents to Morehead indicating a reverse mortgage to Urban dated April 21, 2010.  The documents reflected an initial draw in excess of $100,000.  The HUD-1 Settlement Statement identifies the mortgage broker as URS and the closing agent as Able and lists the place of the settlement as Able's office at 3006 W. Belmont Ave. in Chicago. Morehead never went to Able's office, and claims that Diamond fraudulently obtained the $100,000 loan proceeds and used most of those proceeds for his own benefit without her knowledge.

Diamond did not start any work on Morehead's home until July 2011.  At that time a worker came to Morehead's home to install some new laminate flooring and to repair a "lazy-susan" cabinet.  Workers came to Morehead's home in September 2011 and dug a trench

approximately two feet wide and three feet deep around the perimeter of the location of the intended addition. No further work has been done on Morehead's home and she only received $8,000 or $9,000 of the $100,000 draw from the reverse mortgage.

Mason has lived in her home since 1976 and prior to her dealings with Diamond did not have a mortgage on her home. In August 2010, Mason's basement flooded. Thereafter, Diamond approached her while she was sitting on her front porch and asked if her basement had been damaged by recent rain. Mason responded in the affirmative and indicated that she needed the damage repaired. Diamond and a man named Paul Ross ("Ross") went into her home and told her that they could fix the damage and that the repairs would cost approximately $1500. Mason told Diamond that she did not want to take out a mortgage on her home, but that she could afford a monthly payment.

According to Mason, Diamond and Ross had her sign papers, but did not let her read them or give her a copy of them. Diamond and Ross returned approximately a week later and had Mason sign more papers. By that time, the basement had an unpleasant odor from the flood damage. They said that the papers were just to "give [Mason's] consent to them starting the work on her basement." (Compl. ¶ 143.) Less than a week later, one of Diamond's employees picked Mason up and took her to the URS or UCA offices near the intersection of Damen and Fullerton in Chicago. Fefferman met Mason at the URS or UCA offices and had her sign more papers, but again did not let her read them or give her copies. On September 15, 2010, a reverse mortgage dated September 2, 2010, identifying Urban as the lender and MERS as the nominee mortgagee was recorded with the Cook County Recorder of Deeds. Both notarized both mortgages but was not present when Mason signed any documents. Able was the closing agent,

but Mason never went to Able's offices. Pursuant to the HUD-1 Settlement Statement, Mason should have received $20,750.74 "cash to borrower" from the loan proceeds, but she did not receive any proceeds. Able allegedly disbursed the loan proceeds to Diamond without Mason's authorization.

None of the defendants performed any work on Mason's home. Shortly after the meeting at the URS or UCA offices, Mason realized that she had entered into a reverse mortgage and called Fefferman on September 7, 2010 to cancel the transaction. Fefferman told her that it was too late and that they could only cancel the mortgage if she came up with $24,000.

## LEGAL STANDARD

In ruling on a Rule 12(b)(6) motion, the court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in the plaintiff's favor. *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002). To survive a Rule 12(b)(6) motion to dismiss, the complaint must not only provide the defendant with fair notice of a claim's basis, but also must establish that the requested relief is plausible on its face. *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009); *see Bell Atl.* v. *Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. At the same time, the plaintiff need not plead legal theories. *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010). It is the facts that count.

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To satisfy the pleading threshold under Rule 9(b), the pleader must detail "the identity of the person who made the misrepresentation, the time, the

place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Gen. Elec. Cap. Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1078 (internal quotation marks omitted); *Vicom Inc.* v. *Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994). Stated differently, the complaint must include the "who, what, when, and where of the alleged fraud." *Uni*Quality, Inc.* v. *Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992)(internal quotation marks omitted).

## ANALYSIS

### I. Count IV - Violation of the ICFA

The ICFA prohibits "unfair methods of competition and unfair or deceptive acts or practices . . . [used] in the conduct of any trade or commerce . . ." 815 Ill. Comp. Stat. 505/2. To state a claim for a violation of the ICFA, plaintiffs must allege: (1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) that the deception occurred in the course of conduct involving trade and commerce; and (4) that the deception proximately caused plaintiff's injury. *Cozzi Iron & Metal, Inc.* v *U.S. Office Equip., Inc.,* 250 F.3d 570, 574 (7th Cir. 2001) (citing *Connick* v. *Suzuki Motors Co., Ltd.*, 675 N.E.2d 584, 593,174 Ill. 2d 482,(Ill. 1996)).

Plaintiffs allege specific facts, setting out the who, what, when, where and how of Both's, Diamond's, URS's and other defendants' conspiracy to fraudulently induce plaintiffs to enter into reverse mortgages in the guise of offering home repair contracts with discriminatory and unfavorable terms, which caused plaintiffs' injuries. According to the complaint, Both and Diamond misrepresented the nature and terms of the reverse mortgage documents they had Walton, Morehead, and Mason sign and did not allow plaintiffs to read or retain copies of those

documents.  All three plaintiffs claim that they did not want to enter into reverse mortgages, and did not know or understand that they had signed reverse mortgage documents with "cash out" provisions and that they did not authorize the loan proceeds to be paid directly to Diamond or URS.  Plaintiffs further allege that Both, after plaintiffs signed the reverse mortgage documents, filled-in blanks in those documents, which allowed the loan proceeds to be diverted to Diamond or URS without plaintiffs' knowledge.  On these facts, plaintiffs have alleged the who, what, when, where and how of defendants' deceptive conduct with sufficient particularity to survive a motion.  Accordingly, both motions to dismiss are denied as to Count IV of the complaint.

## II.    Counts V - Violation of the Civil Rights Act

In Count V, plaintiffs allege that defendants Diamond, Fefferman, Harbor, URS, and UCA had a policy of intentionally and disproportionately targeting African-Americans on the south and west sides of Chicago, like plaintiffs, with mortgage loans whose terms were less favorable than the terms given to similarly situated Caucasian borrowers, in violation of 42 U.S.C. § 1981.[1]  Defendants allegedly carried out this discriminatory policy through marketing techniques and other practices.  Plaintiffs also claim that defendants had a policy of intentionally and disproportionately targeting American-Americans on the south and west sides of Chicago, like plaintiffs, with home repair contracts for incomplete, shoddy, defective and dangerous home repair work, in violation of 42 U.S.C. §1981.

As an initial matter, claims brought under the pre-1990 version of  § 1981, which involve the making or enforcement of contracts are subject to the statute of limitations for

---

[1]The complaint references plaintiffs' ages.  Plaintiffs, however, concede that they cannot bring an age discrimination claim pursuant to § 1981.  *See Bell* v. *City of Milwaukee*, 746 F.2d 1205, 1232 (7th Cir. 1984).

personal injury actions.[2]  *See Dandy v. United Parcel Services, Inc.*, 388 F.3d 263, 269, n.4 (7th

Cir. 2004); *Goodman* v. *Lukens Steel Co.*, 482 U.S. 656, 658 (1987); *Smith* v. *City of Chicago*

*Heights*, 951 F.2d 834, 836 n.1 (7th Cir. 1992).  In Illinois, the statute of limitations governing

personal injury actions is two years.  735 Ill. Comp. Stat. 5/13-202.  "While complaints typically

do not address affirmative defenses, the statute of limitations may be raised in a motion to

dismiss if 'the allegations of the complaint itself set forth everything necessary to satisfy the

affirmative defense.'"  *Brooks*, 578 F.3d at 579 (quoting *United States* v. *Lewis*, 411 F.3d 838,

842 (7th Cir. 2005)).  Analyzing the statute of limitations is appropriate in this case because the

relevant dates are set forth unambiguously in the complaint.  *Brooks*, 578 F.3d at 579.

Plaintiffs filed the instant complaint on June 8, 2012.  Morehead alleges that she entered

into the mortgage and construction contracts giving rise to her §1981 claim in April 2010, which

is outside of the two-year statute of limitations, unless she can demonstrate that her claim arises

under the 1991 Amendments to the Civil Rights Act.  Although defendants raised this issue in

their motion to dismiss, Morehead did not address it in her response.  Accordingly, the court

grants the motion to dismiss as to Morehead's §1981 claim in Court V, finding that it is time-

barred.  *See Dandy*, 388 F.3d at 269, n.4.

The motion to dismiss is denied as to Walton and Mason's §1981 claims.  Walton and

Mason entered into the disputed mortgage and construction contracts in September 2010, within

---

[2] Under one of the amendments contained in the Civil Rights Act of 1991, "to make and enforce contracts" "includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." § 1981(b).  Claims brought under the amendments are subject to the four-year statute of limitations provided at 28 U.S.C. § 1658(a).  *Jones v. Donnelley & Sons Co.*, 124 S.Ct. 1836, 541 U.S. 369, 382 (2004).

the applicable two-year statute of limitations. Further, they have sufficiently stated claims under §1981. Section 1981 provides, in relevant part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every state and territory to make and enforce contracts . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981. Section 1981 covers private acts of discrimination. *Daniels* v. *Pipefitters' Ass'n Local Union No. 597*, 945 F.2d 906, 913 (7th Cir. 1991). Section 1981 comprehensively "bars all racial discrimination with respect to making and enforcing contracts." *Gonzalez* v. *Ingersoll Milling Machine Co.*, 133 F.3d 1025, 1034 (7th Cir. 1998). Walton and Mason's allegations that defendants provided them with less favorable mortgage and construction contract terms based on their race are sufficient to state a § 1981 claim. Accordingly, the motion to dismiss Count V as to Walton and Mason is denied.

## III.   Count VI - Violation of the Fair Housing Act

Similar to the CRA, claims brought under the FHA are subject to a two-year statute of limitations. 42 U.S.C. § 3613(a)(1)(A); *Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 539 (7th Cir. 2011). The FHA makes it "unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, familiar status, or national origin." 42 U.S.C. § 3605(a). The FHA defines "residential real estate-related transactions" to include "the making or purchasing of loans or providing other financial assistance . . . for purchasing, constructing, improving, repairing, or maintaining a dwelling." 42 U.S.C. § 3605(b). Section 3605 only applies to transactions involving the "making or purchasing of loans." *Davis* v. *Wells Fargo Bank*, 685 F. Supp. 2d 838, 844 (N.D. Ill. 2010). The FHA does not apply to home repair

contracts. *See Binnifield v. Diamond*, 10 C 5200, 2011 WL 2200654 at *5 (N.D. Ill. May 31, 2011). Accordingly, the claims in Count VI are limited to plaintiffs' allegations related to the reverse mortgages and any claims related to home repair contracts are dismissed from Count VI.

According to the complaint, URS "is or was a home repair and remodeling contractor and a general contractor." (Compl.¶ 11.) Section 3605 does not apply to URS because URS is not involved in the business of making or purchasing loans. Therefore, Count VI is dismissed as to URS. Morehead's FHA claim is also dismissed as time-barred. As stated above, Morehead claims that she entered into the disputed loan in April 2010, more than two years before she filed the instant complaint in June 2012.

Walton and Mason's FHA claims related to the reverse mortgages survive as to Diamond. Walton and Mason claim that Diamond was allowed to broker loans in the name of Harbor. (Comp.¶ 15.) They further claim that Diamond intentionally discriminated against them because they were African-American by targeting them for unconscionable financing terms. These allegations are sufficient to state a claim for a violation of §3605.

## IV.    Count VII - Civil Conspiracy

"Civil conspiracy consists of a combination of two or more persons for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means." *Adcock* v. *Brakegate, Ltd.*, 645 N.E.2d 888, 894, 164 Ill. 2d 54, 62,(Ill. 1994). "The function of a conspiracy claim is to extend liability in tort beyond the active wrongdoer to those who have merely planned, assisted or encouraged the wrongdoer's acts. *Id.* (citing W. Prosser, Torts § 46, at 293 (4th ed. 1971)).

Similar to their ICFA claim, plaintiffs have sufficiently alleged a civil conspiracy. Plaintiffs have alleged that the named defendants conspired to fraudulently induce them into entering into unfavorable reverse mortgages and construction contracts. Further, plaintiffs claim that defendants' actions reduced the value of their homes and injured them. Accordingly, the motions to dismiss are denied as to Count VII of the complaint.

## ORDER

Defendant Dennis Both's motion to dismiss [dkt. 25] is denied. Defendants' Diamond and URS's motion to dismiss [dkt. 36] is granted in part and denied in part. Morehead's claims in Counts V and VI are dismissed as time-barred. Count VI is dismissed as to URS. The docket does not indicate that UCA or Able have been served with summons or a copy of the complaint. If plaintiffs do not file an executed return of summons as to these defendants by April 15, 2013, all claims against UCA and Able will be dismissed pursuant to Rule 4(m). Plaintiffs also have not identified or served any "unknown assignees." Accordingly, the complaint is dismissed as to the unidentified "unknown assignees." Defendants Both, Diamond and URS are directed to answer the claims remaining in the complaint by April 15, 2013. The parties are directed to appear for a scheduling conference on May 9, 2013 at 8:30 a.m.

ENTER:

Dated: March 29, 2013                                 Enter: _____

                                                      JOAN HUMPHREY LEFKOW
                                                      United States District Judge